CC-97-565                                                          1

En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| Asociación de Residentes de Park Side, Inc., y otros<br>　　　Peticionarios<br><br>　　　V.<br><br>Junta de Planificacion y otros<br>　　　Recurridos | Certiorari<br><br>99 TSPR 149 |

Número del Caso: CC-1997-0565

Abogados de la Parte Peticionaria:　Lcdo. Mario J. Pabón
　　　　　　　　　　　　　　　　　　Lcdo. Manuel Maldonado
　　　　　　　　　　　　　　　　　　Lcdo. José M. De Juan

Abogados de la Parte Recurrida:　　Lcdo. Efrén B. Lugo Pérez

Abogados de la P.R.T.C.:　　　　　　Lcda. Ivonne Aguilú
　　　　　　　　　　　　　　　　　　Lcda. Sandra Torres
　　　　　　　　　　　　　　　　　　Lcdo. Juan C. Gómez Escarce

Agencia: Junta de Planificación

Tribunal de Circuito de Apelaciones: Circuito Regional II

Juez Ponente: Hon. Córdova Arone

Fecha: 10/7/1999

Materia: Revisión de Decisión de Agencia Administrativa

　　　Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Asociación de Residentes de
Park Side, Inc. y otros;

    Peticionarios

                           CC-1997-565

      v.

Junta de Planificación y
Telefónica de P. R.

    Recurridos

Opinión del Tribunal emitida por la Juez Asociada señora NAVEIRA DE RODÓN.

San Juan, Puerto Rico, a 7 de octubre de 1999

La Asociación de Residentes de Park Side, Inc. y otros ("la Asociación") nos solicitan que revoquemos la sentencia del Tribunal de Circuito de Apelaciones ("Tribunal de Circuito") emitida el 4 de agosto de 1997 la cual confirmó una resolución de la Junta de Planificación ("la Junta") de 22 de mayo de 1996. Mediante la referida resolución, la Junta aprobó la consulta de ubicación Núm. 94-16-0718-JGU y solicitud de variación en uso autorizando a la Telefónica de Puerto Rico ("la Telefónica") a construir un estacionamiento multipisos en un solar clasificado como residencial (R-3) y un edificio

multiusos en un solar colindante en zona comercial limitada (C-2).

En el presente recurso, la Asociación cuestiona la concesión por parte de la Junta de una variación en uso para la construcción del estacionamiento multipisos. En esencia, nos toca determinar si las circunstancias del presente caso justificaban exceptuar a la Telefónica de los requisitos de zonificación que pesan sobre su terreno y que prohiben la construcción del estacionamiento multipisos. De otra parte, la Asociación alega, que el Reglamento de la Junta de Planificación, Reglamento Núm. 4 de 16 de septiembre de 1996 (en adelante, Reglamento de Zonificación), no tolera los usos que la Telefónica pretende dar al edificio multiusos. Por lo tanto, debemos examinar si los usos propuestos por la Telefónica para el edificio de usos múltiples se encuentran contemplados para una zona C-2.

I

En el 1994 la Telefónica presentó ante la Junta una consulta de ubicación y solicitud de variación para la construcción de un edificio con dos componentes: un estacionamiento multipisos para 658 vehículos y un edificio de usos múltiples. El predio objeto de consulta tiene una cabida de 1.68 cuerdas y radica en la Calle Park Side Núm. 1 de la urbanización Park Side en

Pueblo Viejo, Guaynabo. Éste ubica cerca de los edificios de oficinas centrales de la Telefónica.

El terreno donde la Telefónica pretendía ubicar el proyecto está subdividido en dos lotes con diferentes clasificaciones. Según el Mapa de Zonificación de Guaynabo vigente, el estacionamiento multipisos se construiría en un solar clasificado como R-3 destinado al uso residencial y las facilidades multiusos en un distrito C-2 de uso comercial limitado. La solicitud de variaciones presentada se refería exclusivamente a la construcción del estacionamiento multipisos en el solar R-3, ya que la Telefónica entendía que la construcción del edificio multiusos sobre el lote de clasificación C-2 se encontraba permitida por el Reglamento de Zonificación. Cabe señalar que el edificio de estacionamiento inicialmente propuesto constaba de cuatro pisos, dos de los cuales estarían soterrados. Luego, durante el proceso de consulta, la Telefónica enmendó su memorial explicativo a los efectos de construir los cuatro pisos del estacionamiento sobre la tierra.[1]

Al percatarse de los planes de la Telefónica, el 12 de septiembre de 1994 la Asociación presentó ante la Junta una solicitud de intervención y vista pública para exponer sus

---

[1] La Junta de Calidad Ambiental ("JCA") mediante carta de 15 de junio de 1994 certificó que el proyecto original cumplía con la Ley sobre Política Pública Ambiental. Sin embargo, el segundo Memorial Explicativo, el cual variaba significativamente el concepto e impacto ambiental del proyecto, nunca fue considerado, ni aprobado por JCA. Peor aún, la oficial examinadora de la Junta no permitió se contrainterrogara a los testigos y peritos de la Telefónica sobre el asunto.

puntos en cuanto al proyecto. El 21 de septiembre de 1994 la Junta denegó ambos planteamientos y a su vez aprobó la consulta ubicación del Proyecto incluyendo las variaciones solicitadas. La Asociación solicitó reconsideración a la Junta, la cual fue denegada.

Inconforme con la decisión de la Junta, la Asociación, acudió primero al Tribunal Superior mediante recurso de revisión, luego ante el Tribunal de Circuito en certiorari y finalmente ante nos alegando que la variación concedida, por tratarse de una variación en uso requería la celebración de vistas públicas. Este Tribunal, mediante Opinión Per Curiam de 6 de noviembre de 1995, Asoc. Res. Park Side v. J.P., 139 D.P.R. _____ (1995), 95 J.T.S. 149, determinó que la figura aplicable al caso de autos era la de la variación en uso y, por lo tanto, la Junta estaba obligada por sus propias reglas a celebrar vistas públicas antes de concederla. También, ordenó la paralización de la construcción del edificio de estacionamiento, la cual ya había comenzado.[2]

Así las cosas, el 27 de febrero y 4 de marzo de 1996 la Junta celebró vistas públicas para dilucidar el asunto. A las referidas audiencias comparecieron residentes de todas las áreas circundantes, la Telefónica, representada por sus abogados y varios peritos. Estos últimos testificaron sobre el impacto del

---

[2] Tras verificar que el fin al cual se destinaría el edificio multiusos se encontraba en armonía con el Reglamento de Zonificación, emitimos Resolución el 4 de enero de 1996 donde aclaramos que la orden de paralización sólo aplicaba al edificio de estacionamiento que se comenzaba a construir sobre el solar R-3 y no al edificio multiusos.

Proyecto de estacionamiento en el tránsito, ruido y contaminación ambiental de la zona. La Junta emitió una decisión el 22 de mayo de 1996 mediante la cual aprobó la construcción del proyecto de estacionamiento multipisos según solicitado, esto es, con todas las variaciones y con los cuatro pisos sobre tierra.

Tras denegarse la reconsideración, la Asociación solicitó revisión al Tribunal de Circuito. El foro apelativo mantuvo la paralización de la construcción del estacionamiento, pero finalmente confirmó la decisión de la Junta mediante sentencia emitida el 4 de agosto de 1997.

No conforme con la decisión del Tribunal de Circuito, la Asociación acudió ante nos y atribuyó a la Junta[3] la comisión de cinco errores. A saber,

1. Erró la Junta de Planificación al conceder una variación en uso para la construcción del edificio de estacionamiento de la Telefónica, a pesar de que no existen circunstancias excepcionales que justifiquen la misma y en directa contravención a la doctrina sobre el "Daño Autoinfligido".

2. Erró la Junta de Planificación al no permitir que se contra interrogara a testigos de la telefónica sobre temas claramente relevantes, y al permitir que durante el contrainterrogatorio limitado de algunos testigos, éstos pudieran hablar directamente con sus abogados, violándose el derecho al debido procedimiento de ley de los residentes.

3. Las determinaciones de hecho y conclusiones de derecho de la Junta de que el edificio multiusos no afecta la situación del tránsito, que el ruido y la contaminación ambiental, no están apoyadas por evidencia sustancial que surja del record administrativo.

---

[3] Entendemos que la Asociación lo que quiso plantear ante nos fue que erró el Tribunal de Circuito al confirmar a la Junta por las razones enumeradas.

4. Erró la Junta al determinar que los usos a los cuales se pretende destinar el edificio multiusos están permitidos en un distrito C-2.

5. Erró la Junta al concluir que el proyecto propuesto por la Telefónica cumple con el Plan de Uso de Terreno y satisface los criterios de un Desarrollo Extenso.

Por considerar que la discusión del primer y cuarto error dispone adecuadamente del presente recurso, se hace innecesario examinar los restantes señalamientos de error. Veamos.

En su primer señalamiento de error, la Asociación impugna la variación en uso que la Junta concedió a la Telefónica para construir un edificio de estacionamiento multipisos en un solar de clasificación residencial. Señala, que en el presente caso están ausentes las circunstancias de tipo excepcional que justifican eximir a un proyecto del cumplimiento con el Reglamento de Zonificación. Además, aducen que las circunstancias que la Telefónica cita como fundamento para solicitar la variación en uso, fueron creadas por la propia Telefónica y que, por ende, cualquier menoscabo al disfrute de su propiedad resultante es autoinfligido. Le asiste la razón a la Asociación.

II

La Ley Orgánica de la Junta de Planificación, Ley Núm. 75 de 24 de junio de 1975, según enmendada, 23 L.P.R.A. sec. 62 y ss asigna a dicha agencia la responsabilidad de dirigir el

desarrollo integral de Puerto Rico de modo que "fomente en la mejor forma la salud, seguridad, el orden, la convivencia, la prosperidad, la defensa, la cultura, la solidez económica y el bienestar general de los actuales y futuros habitantes del país". (Énfasis suplido.) La Junta adopta el Reglamento de Zonificación, supra, para guiar el uso y desarrollo de los terrenos en Puerto Rico. Mediante zonificación se establecen las normas esenciales sobre cómo y dónde deben ubicarse las múltiples actividades sociales y económicas del país.[4]

En su Sec. 98.00, el Reglamento de Zonificación, supra, establece la figura de la variación la cual permite al titular de una propiedad solicitar que se le exima de las restricciones de zonificación que sujetan su propiedad. El propósito de la figura es evitar que la aplicación literal de los requisitos de zonificación resulten en una **confiscación** del disfrute de la propiedad.[5] La Junta sólo debe conferir variaciones en circunstancias extraordinarias y para evitar perjuicios a la propiedad ya que debe respetarse la política pública y estrategia de desarrollo ordenado a largo plazo plasmados en el mapa de zonificación. Conceder variaciones a los requisitos de zonificación de forma laxa, destruye el objetivo de la planificación urbana. Sobre el particular señalamos en A.R.P.E. v. J.A.C.L., 124 D.P.R. 858, 862 (1989):

---

[4] Véase Introducción del Reglamento de Zonificación, supra.
[5] Id., Sec. 98.02.

Por la naturaleza del interés público implicado, las variaciones a los requisitos de zonificación no se favorecen y deben utilizarse selectivamente en aquellas circunstancias en que un propietario demuestre que las restricciones le causaron un daño particular que no comparte con otros. "Por eso se descartará una variación cuando no haya prueba de que la situación del dueño sea singular y distinta a la de sus colindantes." (Énfasis suplido y citas omitidas.)

La Sec. 98.05 del Reglamento de Zonificación, supra, establece la figura de la variación en uso para la situación en que el propietario de un terreno desea utilizarlo para fines no permitidos en la zona donde ubica. La referida sección establece la facultad de la Junta para eximir de los requisitos de zonificación cuando existen circunstancias excepcionales y siempre que tales circunstancias no hayan sido creadas por el mismo dueño del terreno. La Junta puede conceder variaciones en uso cuando se establezca claramente que ninguno de los usos que están permitidos en el distrito es factible en la propiedad desde el punto de vista físico o económico. La Sec. 98.05 enumera además, algunos factores que la Junta debe tomar en consideración al conceder una variación en uso.[6]

---

[6]  1.  El costo de adaptar la propiedad a los usos permitidos debido a disposiciones de este u otros reglamentos y el beneficio que se derivaría una vez adaptada ésta para los usos permitidos.

2.  Las razones por las cuales ningún uso permisible es factible en la propiedad sin la variación deben ser **únicas a la misma y no una característica general del distrito** o del sector del distrito donde ubica. **No podrán haber sido causados por el dueño**.

3.  El uso para el cual se solicita la variación a las disposiciones reglamentarias es compatible con

La Telefónica fundamenta su solicitud de variación en uso en la grave crisis de estacionamiento que aqueja toda el área de San Patricio. Señalan que el solar en cuestión siempre se ha dedicado a estacionamiento y que este es el único uso factible para ese terreno. Alegan que el no permitirle <u>ampliar</u> el número de estacionamientos disponibles por medio de la construcción del edificio de estacionamiento multipisos equivale a una confiscación de la propiedad. Además, insisten en que las razones por las cuales ningún uso permisible es factible no fueron creadas por ellos, ya que el solar se encuentra en un <u>área</u> con deficiencias marcadas en estacionamiento. Finalmente, señalan que el edificio de estacionamiento, de por sí, no generará tránsito adicional al área. No nos convence.

En primer lugar, la Telefónica no ha podido probar que las circunstancias en que fundamenta su solicitud, a saber, la crisis en estacionamiento, son <u>particulares al solar en cuestión</u>. Por el contrario, de los propios argumentos de la

los propósitos del distrito y con el vecindario o comunidad en que ubica.

4. La variación solicitada no afecta adversamente, entre otros, los siguientes factores:

a. La disponibilidad de infraestructura
b. El contexto en el que ubica
c. <u>El ambiente de la calle</u>
d. La seguridad y tranquilidad de los vecinos

5. El uso propuesto beneficia al vecindario

6. El uso para el cual se solicita la variación está permitido por las disposiciones del Tópico sobre Zonas Escolares de este Reglamento. (Énfasis suplido.)

Telefónica se desprende que el déficit en estacionamiento es un problema que aqueja toda el área donde ubica el solar y no es una razón única a la propiedad en cuestión como requiere el Reglamento de Zonificación.

Segundo, la Telefónica no ha demostrado que ningún uso permisible por el Reglamento de Zonificación es factible. Señala la Telefónica que desde el 1966 el predio en controversia se ha utilizado como estacionamiento y que "[e]l adaptar la propiedad a usos estrictamente residenciales requeriría un cambio en la naturaleza del quehacer de la PRTC...". Sin embargo, omite discutir el hecho de que el Reglamento de Zonificación permite la utilización del solar R-3 como estacionamiento abierto y que en ningún momento la pretensión de los residentes ha sido que se deje de utilizar como tal.

Los actos de la propia Telefónica demuestran que el uso como estacionamiento abierto del solar es totalmente factible, ya que ellos mismos lo han venido utilizando por años de este modo. Difícilmente puede sostenerse que el no poder aumentar el número de estacionamientos en el solar constituye una confiscación de la propiedad. El derecho a la propiedad privada no incluye el derecho de explotar al máximo sus posibilidades, pues su disfrute siempre estará condicionado a intereses sociales.

En cualquier caso, aún si se considerara que la crisis de estacionamiento en el área de San Patricio es una condición de naturaleza tan excepcional y particular al solar en cuestión, que justifica la concesión de una variación en uso, la norma de autoinflicción de daño impide otorgar a la Telefónica la

variación en uso solicitada. El problema de estacionamiento en gran medida obedece a los tres edificios que albergan las operaciones de la Telefónica en el sector.[7] Además, hay que considerar que, al comprar el solar en cuestión, la Telefónica estaba plenamente consciente, no solo de sus necesidades de estacionamiento, sino también de las restricciones de zonificación que pesaban sobre el solar.

En Asociación v. J.A.C.L, 116 D.P.R. 326, 334 (1985), el adquirente de una propiedad zonificada como R-3 comenzó a remodelarla para establecer en ella un dispensario médico y para

---

[7] Los datos sobre la necesidad de estacionamiento que ofreció la Telefónica ante la Junta resultan contradictorios. Por un lado, para efectos de probar que el edificio de estacionamiento no generará tránsito adicional, los peritos de la Telefónica alegan que en la "hora peak" sólo se estacionarán 300 vehículos en el edificio y que el edificio multiusos sólo generará la necesidad de 200 aparcamientos. ¿Cuál es entonces la necesidad de construir un edificio en un área residencial y duplicar el número de estacionamientos?

Por otro lado, al momento de demostrar la necesidad de aumentar la cantidad de estacionamientos y probar el déficit en la zona, incluyen en el cálculo a la totalidad de empleados de la Telefónica. Para efectos del beneficio que el estacionamiento proveerá a la comunidad, arguyen que los 658 espacios se utilizarán en su totalidad y que esto liberará las calles de la zona de los automóviles de los empleados de la Telefónica.

Resulta evidente que el único objetivo del estacionamiento multipisos propuesto no es el de proveer estacionamiento al edificio multiusos contiguo, como representó la Telefónica en un principio. En realidad, el edificio aspira a satisfacer la necesidad de estacionamiento creada por la totalidad de las operaciones de la Telefónica en el área. De modo que resulta falsa la representación de que no aumentará el tránsito en las calles de la urbanización Park Side, pues el estacionamiento servirá a 658 empleados Telefónicos que actualmente distribuyen sus automóviles en distintas áreas de estacionamiento por todo el sector de San Patricio. Cuando los solares objeto de consulta se utilizaban como estacionamiento abierto, tenían una capacidad para 300 automóviles, menos de la mitad de lo que albergará el estacionamiento propuesto. No sabemos qué

ello solicitó una variación en uso. En aquella ocasión decidimos que cuando el adquirente compró la propiedad,

> [t]enía pleno conocimiento de las limitaciones de uso. Bajo estas condiciones es claro que está impedido de solicitar – y de que se le conceda – un alivio administrativo vía variación. En otras palabras, como correctamente señala el propio doctor en su comparecencia para mostrar causa "no debe premiarse a aquél que se autoinfligió el perjuicio." (Énfasis suplido.)

En A.R.P.E. v J.A.C.L., 124 D.P.R. 858, 866 (1989), un abogado trató de obtener una variación en uso para abrir una oficina en un sector residencial. Al revocar la variación concedida señalamos,

> En el caso de autos, cuando el abogado recurrido adquirió la propiedad, sabía que pertenecía a una zona residencial que colindaba con un sector comercial. Al conocer estas limitaciones, el letrado se colocó voluntariamente en una posición que le ocasionó un perjuicio irrazonable. En estas circunstancias procede la revocación de la decisión del Foro de Instancia y de la Junta de Apelaciones.

Al adquirir el terreno, la Telefónica sabía que no podía construir allí un edificio de estacionamiento sin variar el uso de dicho solar. Por lo tanto, ésta se puso voluntariamente en la posición de no poder ampliar la facilidades de estacionamiento. Vale aclarar que la doctrina de autoinflicción aplicaría independientemente de que la Telefónica supiera que la restricción sobre la propiedad era real o constructiva. Fuertes, Guillermety v A.R.P.E., 130 DPR 971 (1992).

---

capacidad de estacionamiento tiene el solar R-3 ahora que se ha construido el edificio multiusos en el solar contiguo.

Las disposiciones sustantivas sobre variaciones en uso se encuentran complementadas por requisitos de índole procesal establecidos en las Secs. 4.06 y 4.08 del Reglamento de Zonificación. Aunque las referidas secciones establecen los requisitos procesales para solicitar una rezonificación, dichos requerimientos son igualmente aplicables cuando se solicita una variación en uso.

En lo pertinente al caso de autos, las referidas secciones exigen al proponente someter un memorial explicativo que incluya: "una descripción clara y completa del sector, su localización, características sobresalientes, importancia agrícola, histórica, escénica cultural o natural, las razones que apoyan la solicitud del cambio de zonificación y el beneficio que derivaría el sector o comunidad con respecto al mismo.

Además, en casos como el presente donde se trata de una consulta para una mejora pública, la agencia proponente tiene que evidenciar mediante certificación que ha radicado la documentación correspondiente ante la Junta de Calidad Ambiental ("JCA") en cumplimiento con la Ley de Política Ambiental, Ley Núm. 9 de 18 de junio de 1970, según enmendada, 12 L.P.R.A. sec. 1121 y ss. En caso contrario deberá demostrar que el proyecto está incluido en las exclusiones categóricas de dicha agencia. Reglamento de Procedimientos Adjudicativos, Reglamento Núm. 5244 de la Junta de Planificación de Puerto Rico.

Cuando la Junta ha denegado una solicitud de rezonificación y posteriormente se hace una "solicitud similar" en relación con el mismo terreno, el solicitante debe demostrar, por escrito, que han ocurrido cambios sustanciales en el área circundante al solar que ameriten que la Junta considere nuevamente la solicitud. Sec. 4.07 del Reglamento de Zonificación, supra. Véase Montoto v. Lori, Op. de 11 de marzo de 1998, 145 D.P.R. ___ (1998), 98 J.T.S. 25. La Telefónica incumplió ambos requisitos procesales antes mencionados.

El memorial explicativo con el cual la Telefónica obtuvo el aval de la JCA era sustancialmente distinto al que sometió ante la consideración de la Junta y la Administración de Reglamentos y Permisos (A.R.P.E.) En el memorial que la JCA tuvo ante su consideración el estacionamiento se describía como "un edificio de cuatro pisos, dos de los cuales estarán bajo el nivel del terreno". La Telefónica señaló en este primer memorial que "[e]l impacto del volumen del edificio hacia las zonas residenciales se minimizará con la construcción de dos pisos soterrados" y que "[e]n los frentes de calle se proponen fachadas de poca altura..." Al enmendar el proyecto a los efectos de que los cuatro pisos estuvieran sobre tierra, las circunstancias antes descritas cambiaron sustancialmente. El nuevo memorial debió someterse ante la JCA para su aprobación, pues en términos de impacto ambiental, no es lo mismo un edificio de dos plantas sobre el suelo que uno de cuatro.

Además, en cuanto al segundo requisito, vale señalar que la Junta había negado al dueño anterior una solicitud de

rezonificación para un proyecto de menor envergadura que el estacionamiento multipisos. No obstante, la Telefónica omitió este hecho en su memorial explicativo. Tampoco presentó argumento escrito alguno en relación a los cambios surgidos en la zona desde que la solicitud de rezonificación interpuesta por el dueño anterior fue denegada. La Telefónica incumplió así con el requisito de demostrar por escrito que hubo cambios sustanciales en el área que ameritan se considere nuevamente una solicitud similar. En el presente caso, la variación en uso presentada por la Telefónica, en la práctica, tendría un efecto similar al de una rezonificación, pues se estaría permitiendo no solo un uso ajeno, sino también la construcción de una estructura no contemplada para un distrito R-3.

**Lo antes expuesto no concluye la consideración del caso ante nos.**

IV

A través de su cuarto señalamiento, la Asociación argumenta que la Junta erró al determinar que los usos a los cuales se pretende destinar el edificio multiusos están permitidos en un distrito C-2. No les asiste la razón, pues en <u>Asoc. Res. Park Side</u> v. <u>J.P.</u>, supra, este aspecto de la controversia ya fue decidido por este Tribunal. Sin embargo, en comparecencias posteriores a la referida decisión, la Teléfonica ha pretendido conseguir el aval de este Tribunal para dedicar el edificio multiusos a fines distintos a los que consideró tanto la Junta durante la consulta de ubicación, como A.R.P.E. al otorgar permiso de construcción y también este Tribunal en <u>Asoc. Res.</u>

Park Side v. J.P., supra. Por ello es menester que clarifiquemos nuestra posición sobre el asunto. Veamos.

En la resolución que emitimos el 20 de diciembre de 1995, ordenamos a la Junta que se expresara sobre "si el fin al cual éste [el edificio multiusos] está destinado está en armonía con la zonificación C-2". Por lo tanto, al prestar posterior aval a que se continuara la construcción del edificio multiusos sobre el predio C-2, determinamos que los usos propuestos entonces por la Telefónica, ante la Junta de Planificación y ante este Tribunal, estaban permitidos por el Reglamento de Zonificación.

Sin embargo, mediante moción en auxilio de jurisdicción posterior, la Telefónica acude ante nos solicitando permitamos el uso del edificio para "oficinas". Este uso no estuvo contemplado en el memorial explicativo presentado ante la Junta[8] ni ante A.R.P.E., por lo tanto, mediante Resolución de 27 de abril de 1998 no autorizamos tal uso. Luego, el 3 de mayo de 1999, la Telefónica recurrió nuevamente ante nos, por medio de moción en auxilio de jurisdicción, solicitando se permitiera el uso del edificio, entre otros usos, para oficinas de apoyo a los servicios que se proveerían a los empleados y oficinas "para otros servicios propios de las comunicaciones".

Parece evidente que la Telefónica pretende conseguir el aval de este Tribunal para dedicar el edificio multiusos a usos distintos de aquellos incluidos tanto en los memoriales

---

[8] La Telefónica en su memorial explicativo enmendado describe la parte a construirse en el solar C-2 como un salón de usos múltiples, oficina de orientación, gimnasio y enfermería para los empleados de dicha corporación.

explicativos ante las agencias reglamentadoras como en las representaciones hechas ante este Tribunal. Éstas representaciones nos llevaron a autorizar la construcción del edificio multiusos en el solar C-2. Mediante resolución emitida el 27 de abril de 1998, procedimos a prohibir la utilización del edificio multiusos ya construido con el objeto de examinar si los nuevos usos propuestos estaban permitidos por el Reglamento de Zonificación. Igualmente nos preocupó que al utilizar el edificio multiusos como oficinas fuera a aumentar la necesidad de estacionamiento generada por este edificio y que ello pudiera utilizarse para justificar la construcción del estacionamiento contiguo.

La Sec. 22.02 del Reglamento de Zonificación, supra, enumera los usos permisibles en un distrito C-2. Al examinar la referida sección encontramos que el Reglamento de Zonificación permite que se ubique una "Oficina" en un distrito C-2.[9] Sin embargo, este uso no fue incluido en el memorial que se presentó a la Junta durante la consulta de ubicación y ante A.R.P.E. para la aprobación del permiso de construcción. Debemos recordar que parte del argumento ante la Junta para conseguir la aprobación fue que el edificio multiusos no generaría tránsito adicional a

---

[9] Los distritos comerciales de baja intensidad se crean para proteger a las áreas residenciales afectadas por el crecimiento de las operaciones comerciales. Ello, unido al hecho de que el Reglamento de Zonificación disponga que se permite el uso como "Oficina", en singular, hace necesario que A.R.P.E., utilizando su conocimiento especializado, determine si pueden ubicarse en el edificio multiusos el número y tipo específico de oficinas propuestas por la Telefónica.

las calles de urbanización Park Side pues era para el <u>uso exclusivo de empleados</u> de la Telefónica.

En Puerto Rico, tanto el Reglamento de Zonificación como el Reglamento de A.R.P.E. exigen la obtención de un permiso de uso <u>para ocupar o usar cualquier propiedad.</u>[10] Esto independientemente de que se trate de edificaciones que conlleven construcción o de estructuras previamente existentes. Además la reglamentación vigente obliga a solicitar nuevos permisos de uso cuando deseen hacerse cambios en el uso de un edificio o cuando pretenda utilizarse la estructura para usos que no fueron debidamente identificados al obtener el permiso de construcción. En el caso ante nos, la Telefónica solicita permiso para usar el edificio multiusos para "oficinas para otros servicios propios de las comunicaciones", por primera vez, ante este foro. Dicha determinación corresponde a A.R.P.E.

---

[10] La Sec. 3.02 del Reglamento de Zonificación, supra, dispone:
> 3.02- Requerimiento de Permisos- A partir de la fecha de vigencia de este Reglamento se requerirá por la Administración de Reglamentos y Permisos de un permiso de uso para ocupar o usar cualquier propiedad, estructura o terrenos; o un permiso de construcción para toda construcción, reconstrucción ...

Por otra parte, el Reglamento de Edificación, (Reglamento de Planificación Núm. 7 de 10 de julio de 1968), en su art. I-C-1.0, dispone:

> 2. Los edificios que en adelante se construyeren, ampliaren, reconstruyeren, o modificaren, en todo o en parte , <u>no podrán usarse u ocuparse hasta tanto se expida con Permiso de Uso o Certificados de Construcción, el uso que puede darse y las condiciones en que pueden usarse dichos edificios en sus diversas partes</u>, haciendo constar que los mismos y el uso a que se destinan están de acuerdo con las disposiciones de este Reglamento.

La estructura multiusos construida puede utilizarse para aquellos usos que han sido aprobados tanto por la Junta como por A.R.P.E. Sin embargo, para ubicar otro tipo de "oficinas" en el edificio, deben obtener el correspondiente permiso de uso de A.R.P.E. Es esta agencia la que tiene la pericia para decidir si los usos específicos que se le darán a las oficinas, así como la intensidad de dichos usos, son cónsonos con una zona comercial de baja intensidad cuyo propósito es servir de área de transición entre las áreas residenciales y otros distritos comerciales.[11] En cualquier caso, de A.R.P.E. aprobar el uso como oficinas, la Telefónica no debe utilizar esta autorización para justificar la necesidad adicional de estacionamiento.

De conformidad con los fundamentos antes expuestos, se dictará sentencia mediante la cual se revoque la variación en uso concedida a la Telefónica por la Junta de Planificación para la construcción del edificio de estacionamiento multipisos en el solar clasificado como R-3. Por otra parte, se permite la utilización del edificio multiusos para aquellos usos anteriormente avalados por la Junta. Ello, hasta tanto la Telefónica obtenga el permiso de uso correspondiente de A.R.P.E. para utilizar el edificio para fines adicionales.

Por los fundamentos antes expuestos se revoca la sentencia del Tribunal de Circuito de Apelaciones, Circuito Regional de Bayamón.

---

[11] Introducción del Reglamento de Zonificación, supra.

Miriam Naveira de Rodón
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Asociación de Residentes de
Park Side, Inc. y otros;

    Peticionarios

                             CC-1997-565

    v.

Junta de Planificación y
Telefónica de P. R.

    Recurridos

SENTENCIA

San Juan, Puerto Rico, a 7 de octubre de 1999

    Por los fundamentos antes expuestos, se dicta sentencia mediante la cual se revoca la dictada por el Tribunal de Circuito de Apelaciones. En específico, se revoca la variación en uso concedida a la Telefónica por la Junta de Planificación para la construcción del edificio de estacionamiento multipisos en el solar clasificado como R-3. Por otra parte, se permite la utilización del edificio multiusos para aquellos usos anteriormente avalados por la Junta. Ello, hasta tanto la Telefónica obtenga el permiso de uso correspondiente de A.R.P.E. para utilizar el edificio para fines adicionales.

    Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Corrada del Río disiente por entender que el dictamen del Tribunal de Circuito de Apelaciones es sustancialmente correcto y debe ser confirmado. El Juez Asociado señor Rebollo López disintió sin opinión escrita. El Juez Asociado señor Negrón García está inhibido.

                        Isabel Llompart Zeno
                Secretaria del Tribunal Supremo